UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT TENNESSEE

RICKIE L. KING,                              )
                                             )
                Plaintiff,                   )
                                             )   Civil Case No. 1:10-cv-185
v.                                           )
                                             )   Chief Judge Curtis L. Collier
KEITH MCCARTER, in both his                  )
 individual and professional capacity        )
 as a Niota Police officer,                  )
CITY OF NIOTA, TENNESSEE,                    )
and NIOTA POLICE DEPARTMENT                  )
                                             )
                Defendants.                  )
                                             )

## **M E M O R A N D U M**

Before the Court is a motion for partial summary judgment filed by Defendants Keith

McCarter and the City of Niota ("Officer McCarter" and "City;" collectively, "Defendants") (Court

File No. 14).[1] Plaintiff Rickie King ("Plaintiff") has not responded. For the following reasons, the

Court will **GRANT** Defendants' motion.


## I.      **Relevant Facts**

Plaintiff instituted this 42 U.S.C. § 1983 action in response to a traffic stop and arrest

performed by Officer McCarter. On December 24, 2009, Niota Police Officer Keith McCarter was

on traffic patrol. He clocked Plaintiff's vehicle traveling 58 miles per hour in a 35 miles-per-hour

---

[1]The motion is effectively a motion for full summary judgment, since Defendants seek
judgment on all claims, and the Court earlier dismissed all claims against Codefendant Niota Police
Department.

speed zone.[2]  Officer McCarter signaled to Plaintiff to pull over, and the two vehicles stopped in a

convenience store parking lot.  Officer McCarter approached Plaintiff's vehicle, and asked to see

Plaintiff's license and registration.  Plaintiff handed Officer McCarter the documents, and Officer

McCarter informed Plaintiff of how fast he had clocked him traveling.

Officer McCarter returned to his vehicle to process Plaintiff's documents.  After several

minutes, he returned to Plaintiff's vehicle, handed Plaintiff his documents back, and informed

Plaintiff he was issuing a speeding ticket.  Plaintiff responded, apparently sarcastically, "Thank you

very much, you're really nice."  Plaintiff then said, "You know, shouldn't you be out there getting

some meth heads instead of sitting up there at that [inaudible] all day?"  Officer McCarter began to

say "Let me explain..." when Plaintiff interrupted and, in an agitated voice, said "No, no, let me tell

*you*..."  At this point, Officer McCarter opened the door of Plaintiff's vehicle and said, "OK, it's a

reckless driving offense.  Anything over twenty [inaudible]."  Officer McCarter then directed

Plaintiff to exit the vehicle and place his hands on the side of the vehicle.

Plaintiff did not place both of his hands on the vehicle.  Instead, he placed his left hand on

the vehicle, and turned partially around, towards Officer McCarter, and continued arguing with him.

Officer McCarter continued to instruct Plaintiff to put his other hand on the vehicle, which Plaintiff

did not do.  During this time, Officer McCarter lightly placed his hand on Plaintiff's back several

times.  Plaintiff was gesturing with his right arm, and in his hand he held what appears to be a pen.

"Is that your pen?" Officer McCarter asked, and reached to take it.  Plaintiff snatched his right hand

forward, avoiding Officer McCarter's grasp.  At this point, Officer McCarter backed up by a few

---

[2]Most of the facts come from a video offered into evidence by Defendants (Court File No.
19), which depicts the full video and audio of Plaintiff and Officer McCarter's interaction.

steps, and unholstered his taser. Meanwhile, Plaintiff took his left hand off of the vehicle, began turning away from the vehicle back towards Officer McCarter, and held the pen out to Officer McCarter, offering it to him. Officer McCarter pointed his taser at Plaintiff, and forcefully said, "*Sir*, put your hands on the car or I'm going to tase you!" After arguing with Officer McCarter for approximately nine more seconds, and then tossing the pen aside, Plaintiff turned towards the vehicle and placed both of his hands on it.

Officer McCarter then radioed for assistance. Less than a minute later another police officer arrived on the scene. Officer McCarter asked this officer to handcuff Plaintiff. Before this officer approached Plaintiff, Plaintiff again removed his hands from the vehicle, swinging them backwards, apparently to facilitate his handcuffing. Officer McCarter again yelled "Put your hands on the car!" Once the other officer handcuffed Plaintiff, Officer McCarter reholstered his taser.

Officer McCarter informed Plaintiff he was under arrest for reckless driving. He searched Plaintiff, and began conducting an inventory search of his vehicle. Meanwhile, the other officer placed Plaintiff in the back of Officer McCarter's police cruiser. After several minutes, Officer McCarter returned to his police cruiser to tell Plaintiff his vehicle would be towed to a local body shop. Several minutes later Officer McCarter again returned to the cruiser, and Plaintiff asked him, in a calm voice, "Can you take me on to jail?" Officer McCarter responded that he could not take Plaintiff to jail until the tow truck comes. Plaintiff then said, "can you take the cuffs off; I have an extremely bad back?" Officer McCarter responded, calmly as well, "Absolutely not. Not after the way you acted. No sir, not 'till we get to the jail. I apologize for that." During the remainder of the video, Plaintiff never says he is in pain or that the handcuffs are too tight or are injuring him.

Officer McCarter and Plaintiff sat in the cruiser for several minutes, waiting for the tow

truck. During this time, the two had a seemingly pleasant conversation, all things considered. Plaintiff apologized for his behavior. Officer McCarter explained he does not want to take a chance getting hurt, and that is the reason he acts quickly. The two discussed Plaintiff's criminal record, which Officer McCarter had apparently looked up, and Officer McCarter commended Plaintiff on his good behavior in recent years ("you haven't even had a speeding ticket since 2007"). Officer McCarter told Plaintiff that since Plaintiff was now acting calmly and appropriately, he would drop the disorderly conduct charge. The men discussed Officer McCarter's career as a police officer, and commiserated about the litigious nature of society. At one point Officer McCarter presciently remarked, "Before [my career] is over with, I know I'm going to be sued for something."

After the tow truck came several minutes later, Officer McCarter drove Plaintiff to the jail. During the trip, Officer McCarter and Plaintiff continued casual conversation. They arrived at the Justice Center at 2:52 p.m., approximately 48 minutes after Officer McCarter first pulled Plaintiff over. Plaintiff was charged with reckless driving and speeding. He was convicted of speeding, but not reckless driving because Officer McCarter did not appear at the court date.

Plaintiff has sued Officer McCarter and the City, claiming his civil rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution were violated by Officer McCarter during this incident. Defendants have moved for summary judgment on all claims.


## II.      Standard of Review

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based merely on its allegations; it must submit significant probative evidence to support its claims. *See Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Should the non-movant fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.    Analysis

### A.    Qualified Immunity

Plaintiff claims Officer McCarter's actions violated his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.[3] Defendants respond Officer McCarter,

---

[3]Plaintiff's complaint is quite vague on the claims he is bringing. However, in answer to an interrogatory, Plaintiff clarified he is bringing First, Fourth, and Fourteenth Amendment claims.

and likewise the City, are protected from all of Plaintiff's claims under the doctrine of qualified immunity. The qualified immunity doctrine shields government officials performing discretionary actions from civil damages liability as long as their actions reasonably could have been thought consistent with the rights they are alleged to have violated. *Anderson v. Cheighton*, 483 U.S. 635, 638 (1987). Even if a government official deprives a plaintiff of a federal right, "qualified immunity will apply if an objective reasonable officer would not have understood, by referencing clearly established law, that his conduct was unlawful." *Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The plaintiff bears the burden of showing a defendant is not entitled to qualified immunity. *See Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

To determine if qualified immunity applies, courts employ a two-part test. First, courts determine whether the facts, taken in a light most favorable to the party alleging injury, show an officer's conduct violated a Constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the facts so viewed do not show a Constitutional right was violated, there is no need for further inquiry. Second, if a Constitutional right was violated, courts must determine "whether the violation involved a clearly established constitutional right of which a reasonable person would have known." *Peete v. Metro. Gov't of Nashville and Davidson Cnty.*, 486 F.3d 217, 219 (6th Cir. 2007) (citation omitted); *see also Saucier*, 533 U.S. at 201. This second inquiry looks closely at the particular context of the case rather than asking whether a right was clearly established "as a broad general proposition." *Saucier*, 533 U.S. at 201.

Since qualified immunity shields reasonable conduct, even when it is mistaken, the Sixth

Circuit has at times added a third line of inquiry to the traditional two-part test: "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Peete*, 486 F.3d at 219; *cf. Everson v. Leis*, 556 F.3d 484, n.4 (6th Cir. 2009) (stating regardless of whether the two-prong or the three-prong test is applied, "the essential factors considered are [] the same").

### B.    First Amendment

Plaintiff claims his freedom of speech, a right safeguarded by the First Amendment to the Constitution, was violated by Officer McCarter. Plaintiff's theory is less than clear. Construing his claim charitably, the Court regards Plaintiff as alleging Officer McCarter's decision to arrest him was made in retaliation for Plaintiff's angry, but Constitutionally protected, words to Officer McCarter during the ticketing process.

Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim because Officer McCarter did not violate Plaintiff's First Amendment rights. Plaintiff does not dispute he was driving 23 miles per hour over the speed limit when he was pulled over, and it is clear from the video, which shows Plaintiff's speed, that he was in fact driving at this speed. Under Tennessee law, a person commits reckless driving "who drives any vehicle in willful or wanton disregard for the safety of persons or property." Tenn. Code Ann. § 55-10-205. The Court determines that based on his observation of Plaintiff's high speed, Officer McCarter could reasonably believe Plaintiff was driving recklessly, as well as speeding. Officer McCarter therefore had probable cause to arrest Plaintiff. *See Miller v. Sanilac Cnty.*, 606 F.3d 240, 248 (6th Cir. 2010) ("An officer has probable cause when 'the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed.'") (quoting *Henry v. United States*,

361 U.S. 98, 102 (1959)).[4]

The Sixth Circuit has held a plaintiff's First Amendment retaliation claim fails as a matter of law when police had probable cause to arrest him. *Everson v. Calhoun Cnty.*, No. 09-2183, 2011 WL 204453, *3 (6th Cir. Jan. 24, 2011) ("§ 1983 claims for [First Amendment] retaliatory prosecution and arrest fail as a matter of law if the defendant had probable cause"); *Barnes v. Wright*, 449 F.3d 709, 720 (6th Cir. 2006) ("[T]he defendants had probable cause . . . to arrest Barnes . . . . Barnes's First Amendment retaliation claim accordingly fails as a matter of law."); *see also Hartman v. Moore*, 547 U.S. 250, 252 (2006) ("We hold that want of probable cause must be alleged and proven [in a case alleging prosecution in retaliation for First Amendment protected speech]"). Accordingly, because Officer McCarter had probable cause to arrest Plaintiff, Plaintiff's First Amendment retaliation claim fails as a matter of law. Defendants are therefore entitled to summary judgment on Plaintiff's First Amendment claim.

## B.  Fourth Amendment

Plaintiff claims his Fourth Amendment rights were violated when Officer McCarter searched and seized both his person and his vehicle. Plaintiff asserts his arrest itself was wrongful, as were the searches. Plaintiff also appears to argue Officer McCarter used excessive force against him during the arrest.

### 1.  Arrest

The Fourth Amendment to the United States Constitution provides that "[t]he right of the

---

[4]Incidentally, the Court need not determine whether reckless driving or speeding is an arrestable offense under Tennessee law. *See Virginia v. Moore*, 553 U.S. 164, 173 (2008) (holding that regardless of State law restrictions on an officer's authority to make an arrest, "a warrantless arrest satisfies the Constitution so long as the officer has probable cause to believe that the suspect has committed or is committing an offense") (citation omitted)).

people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." In order to show an arrest was wrongful, that is, Constitutionally unreasonable, "a plaintiff must prove that the police lacked probable cause." *Feathers v. Aey*, 319 F.3d 843, 851 (6th Cir. 2003). As explained above, Officer McCarter's observation of Plaintiff traveling 23 miles per hour over the speed limit gave rise to probable cause to arrest Plaintiff. Accordingly, Plaintiff's arrest did not run afoul of the Fourth Amendment.

### 2. Search of Person

Likewise, the search of Plaintiff's person did not violate the Fourth Amendment. Warrantless searches "are *per se* unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions," *Katz v. United States*, 389 U.S. 347, 357 (1967). One of these exceptions is the "'search incident to arrest' principle." *Chimel v. California*, 395 U.S. 752, 762 (1969). Under this doctrine, "searches of persons incident to a lawful arrest require 'no additional justification,' beyond the establishment of probable cause for the arrest." *United States v. Smith*, 549 F.3d 355, 361 (6th Cir. 2008) (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973)). Because there was probable cause to arrest Plaintiff, the search of his person incident to that arrest did not violate Plaintiff's Fourth Amendment rights.

### 3. Search of Vehicle

Inventory searches of vehicles are another "well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). Pursuant to this doctrine, "law enforcement officers may make a warrantless search of a legitimately seized vehicle, provided that the inventory is conducted according to standardized criteria or an established routine." *United States v. Player*, 201 F. App'x 331, 333 (6th Cir. 2006) (citing *Bertline*, 479 U.S.

at 372-74).  Here, Plaintiff has not identified any reason, other than the purported wrongfulness of his arrest, why the seizure of his vehicle was illegitimate.  Nor has he alleged the inventory of his vehicle was inconsistent with standardized criteria or established routine.  Officer McCarter and the assisting officer inventoried Plaintiff's vehicle immediately before having it towed and impounded.  This scenario is in the heartland of the "inventory exception."  Accordingly, the Court finds the search of Plaintiff's vehicle did not violate his Fourth Amendment rights.

### 4.     Excessive Force

"A claim of excessive force under the Fourth Amendment requires that a plaintiff demonstrate that a seizure occurred, and that the force used in effecting the seizure was objectively unreasonable."  *Rodriguez v. Passinault*, No. 09-1949, 2011 WL 1085662, *4 (6th Cir. July 29, 2010).  To show objective unreasonableness with respect to handcuffing, Sixth Circuit precedent "require[s] that a plaintiff show both that officers handcuffed the plaintiff excessively and unnecessarily tightly and that officers ignored the plaintiff's pleas that the handcuffs were too tight."  *Vance v. Wade*, 546 F.3d 774, 783 (6th Cir. 2008).  Additionally, the Sixth Circuit requires evidence of an injury-in-fact.  *Lyons v. City of Xenia*, 417 F.3d 565, 575-76 (6th Cir. 2005) ("In order to reach a jury on this claim, the plaintiff must allege some physical injury from the handcuffing . . . .").  This requirement ensures every instance of handcuffing – an unpleasant experience by design – does not require recourse to a jury.  *See Nemeckay v. Rule*, 894 F. Supp. 310, 315 (E.D. Mich. 1995) ("If every case in which a person taken into custody with handcuffs were to give rise to a question of constitutional dimension requiring factual inquiry, literally every such case would require submission to the fact-finder.").

Here, Plaintiff's excessive force claim must fail, both with respect to the force used before

his handcuffing, and the handcuffing itself. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham vs. Connor*, 490 U.S. 386, 396 (1989). In this case, Officer McCarter used minimal force against Plaintiff. The video depicts Plaintiff repeatedly disregarding Officer McCarter's instructions to place his hands on the vehicle. At one point, Officer McCarter lightly placed his hand on Plaintiff's back as he instructed him, again, to place his hands on the vehicle. After Plaintiff failed to comply, and began gesturing with his right hand, which grasped a pen, Officer McCarter backed up and pointed his taser at Plaintiff. Considering these circumstances, the Court concludes Officer McCarter's minimal use of force against Plaintiff could not be considered excessive by any reasonable person.

Additionally, Plaintiff's excessive force claim with respect to his handcuffing must fail because the evidence does not demonstrate he was handcuffed excessively and unnecessarily tightly, that Officer McCarter ignored his pleas that the handcuffs were too tight, or that Plaintiff suffered any physical injury. Officer McCarter reasonably determined to handcuff Plaintiff after Plaintiff's repeated failures to obey his instruction to place his hands on the vehicle. The video shows minimal physical contact between Plaintiff and Officer McCarter and the assisting officer during the actual handcuffing. This physical contact consisted of a hand placed on Plaintiff's back, and the manual guidance of Plaintiff's arms as they were handcuffed behind his back. Plaintiff was never shoved, jerked, or struck. In short, the video does not depict Plaintiff being handcuffed excessively and unnecessarily tightly. Furthermore, the evidence does not show Officer McCarter "ignored Plaintiff's pleas" that the handcuffs were too tight. The one statement that could possibly be construed as a "plea" is Plaintiff's request to have the cuffs removed because of his "extremely bad

back." However, this remark did not actually convey Plaintiff was in present physical pain, as opposed to merely fearing future back pain. Moreover, after this one remark, Plaintiff never again mentioned the handcuffs throughout his seemingly pleasant conversation with Officer McCarter over the next half hour. These facts simply do not amount to Officer McCarter's "ignoring" Plaintiff's "pleas." Finally, Plaintiff has presented no evidence he suffered physical injury as a result of being handcuffed. Accordingly, the Court concludes Officer McCarter did not use excessive force in handcuffing Plaintiff, in violation of Plaintiff's Fourth Amendment rights.

The Court finds the facts, viewed in the light most favorable to Plaintiff, show no Fourth Amendment violations occurred with respect to his arrest, the search of his person, the search of his vehicle, and the force used against him. Defendants are therefore entitled to summary judgment on Plaintiff's Fourth Amendment claims.

### 3. Fourteenth Amendment

Plaintiff claims his Fourteenth Amendment substantive due process rights, like his Fourth Amendment rights, were violated by the excessive force used in conjunction with his arrest. However, the Supreme Court has held that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) ("[s]ubstantive due process analysis [] inappropriate . . . if [a plaintiff's] claim is 'covered by' the Fourth Amendment."). Here, since Plaintiff's excessive force claims involve his seizure, they are "covered by" the Fourth Amendment. *See Henderson v. Reyda*, 192 F. App'x 392, 396 (6th Cir. 2006) ("*the Fourth Amendment 'objective reasonableness' analysis should be used in*

*excessive force cases involving searches and seizures*") (emphasis in original). Accordingly, Plaintiff's Fourteenth Amendment excessive force claims are not properly analyzed under the Fourteenth Amendment, and Defendants are therefore entitled to judgment on these claims as a matter of law.

## IV. Conclusion

For the foregoing reasons, the Court determines that, viewing the facts in the light most favorable to Plaintiff, no reasonable fact-finder could conclude Plaintiff's First, Fourth, or Fourteenth Amendment rights were violated. It is therefore unnecessary to reach the next step of qualified immunity analysis; that is, whether any rights which were violated were "clearly established." Because Officer McCarter did not violated Plaintiff's Constitutional rights, he, and likewise the City, are entitled to judgment as a matter of law on all claims. Accordingly, the Court will **GRANT** Defendants' motion for summary judgment (Court File No. 14). There being no other issues in this case, the Court will **ORDER** this case **DISMISSED**.

An Order shall enter.

**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**